Martoche, Smith, Centra and Green, JJ. [*See* 14 Misc 3d 1212(A), 2007 NY Slip Op 50005(U).]

In the Matter of the Dissolution of EL-ROH REALTY CORP. PHILIPPE R. SCHWIMMER, Individually and as Holder of Fifty Percent of the Outstanding Voting Shares of El-Roh Realty Corp., Appellant; JOAN ROTH et al., Respondents, et al., Respondent. ROBERT BALDWIN, ESQ., as Trustee of the SEYMOUR ROTH Living Trust, Intervenor-Respondent. (Appeal No. 2.) [849 NYS2d 865]—Appeal from an order of the Supreme Court, Onondaga County (Donald A. Greenwood, J.), entered February 16, 2007. The order denied petitioner's motion for leave to reargue and granted the motion of respondents Joan Roth and Lois Roth, as executrix of the estate of Lewis Roth, deceased, for partial summary judgment on their counterclaim.

It is hereby ordered that said appeal from the order insofar as it denied leave to reargue is unanimously dismissed and the order is affirmed without costs.

Same memorandum as in *Matter of El-Roh Realty Corp.* (48 AD3d 1190 [2008]). Present—Gorski, J.P., Martoche, Smith, Centra and Green, JJ. [*See* 14 Misc 3d 1212(A), 2007 NY Slip Op 50005(U).]

**195** VILLAGE OF PHILADELPHIA, Appellant, v FORTISUS ENERGY CORPORATION, Respondent, et al., Defendants. [851 NYS2d 780]—

Appeal from an order of the Supreme Court, Jefferson County (Hugh A. Gilbert, J.), entered December 26, 2006. The order, among other things, granted the motion of defendant FortisUS Energy Corporation for summary judgment dismissing the second amended complaint against it.

It is hereby ordered that the order so appealed from is unanimously modified on the law by denying the motion in part

and reinstating the claims in the second cause of action for an equitable mortgage and a vendor's lien against defendant FortisUS Energy Corporation and as modified the order is affirmed without costs.

Memorandum: Plaintiff entered into an agreement (1985 agreement) with Long Lake Energy Corporation (Long Lake) pursuant to which plaintiff agreed to sell property to Long Lake located along the Indian River for the construction and operation of a hydroelectric project. The 1985 agreement set forth a purchase price for the property as well as "other consideration," with specified amounts due upon the signing of the agreement, at the time of the closing, and upon completion of the proposed construction. The remainder of the purchase price was to be paid in 50 annual payments, as set forth in a payment schedule. The 1985 agreement also provided that it was binding upon the parties and their respective heirs, executors, distributees, legal representatives, successors and assigns, and that any transfer or assignment of either party's interest would be valid only if, prior to such transfer or assignment, the prospective successor in interest or assignee agreed in writing to be bound by the terms of the agreement. The 1985 agreement, which was recorded, also provided that the annual payment provision would survive, inter alia, a transfer of title.

In addition to the above provisions, the 1985 agreement provided that the parties agreed that Long Lake intended to assign all of its rights and obligations under the agreement to defendant Philadelphia Corporation (PC), and Long Lake and PC entered into an assignment agreement pursuant to which PC agreed to accept Long Lake's obligations under the 1985 agreement. Although in November 1985 a deed was filed conveying the property from plaintiff to PC, the property was never transferred to Long Lake. In 1999 defendant FortisUS Energy Corporation (FortisUS) purchased the property from PC's successor. It is undisputed that FortisUS did not agree to be bound by the terms of the 1985 agreement and, indeed, the record before us establishes as a matter of law that FortisUS did not have actual notice of that agreement. Plaintiff commenced this action upon being informed by FortisUS that it was not bound to make any payments to plaintiff pursuant to the 1985 agreement, and Supreme Court granted the motion of FortisUS for summary judgment dismissing the second amended complaint against it.

We reject plaintiff's contention that the 1985 agreement was a covenant that ran with the land. "[T]hree conditions . . . must be met in order for a covenant to run with the land: (1) it

must appear that grantor and grantee intended that the covenant should run with the land; (2) it must appear that the covenant is one touching or concerning the land with which it runs; [and] (3) it must appear that there is privity of estate between the promisee or party claiming the benefit of the covenant and the right to enforce it, and the promisor or party who rests under the burden of the covenant" (*328 Owners Corp. v 330 W. 86 Oaks Corp.*, 8 NY3d 372, 382-383 [2007] [internal quotation marks omitted]; *see Neponsit Prop. Owners' Assn. v Emigrant Indus. Sav. Bank*, 278 NY 248, 254-255 [1938], *rearg denied* 278 NY 704 [1938]). "The key inquiry is whether the covenant in purpose and effect substantially alters the legal rights that would otherwise flow from the ownership of the land, and are connected with the land" (*City of New York v Delafield 246 Corp.*, 236 AD2d 11, 24 [1997], *lv denied* 91 NY2d 811 [1998]; *see Neponsit Prop. Owners' Assn.*, 278 NY at 258).

We agree with FortisUS that the 1985 agreement did not run with the land because it did not touch and concern the land. "[A] covenant to pay a sum of money is a personal affirmative covenant which usually does not concern or touch the land" (*Neponsit Prop. Owners' Assn.*, 278 NY at 256). There was no restriction on the use of the property (*see Orange & Rockland Util. v Philwold Estates*, 52 NY2d 253, 263 [1981]) but, rather, there was only a requirement that the owner of the property pay an annual amount to plaintiff for 50 years. The 1985 agreement did not require the owner of the property to use it as a hydroelectric plant and, pursuant to the 1985 agreement, the owner was entitled to use the property however it wished, provided that it made the required payments to plaintiff.

We agree with plaintiff, however, that the court erred in granting that part of the motion for summary judgment dismissing the claims in the second cause of action for an equitable mortgage "and/or" a vendor's lien against FortisUS, and we therefore modify the order accordingly. An equitable mortgage is appropriate where there is unequivocal evidence that the parties intended to create a mortgage (*see Tornatore v Bruno*, 12 AD3d 1115, 1117-1118 [2004]; *see also Mailloux v Spuck*, 87 AD2d 736, 737 [1982], *lv denied* 56 NY2d 507 [1982]), and a vendor's lien, which "is usually implied from circumstances[,] . . . is a pure invention of equity to protect those who have parted with real estate without security" (*Zeiser v Cohn*, 207 NY 407, 414 [1913]). Nevertheless, neither an equitable mortgage nor a vendor's lien will be enforceable against a bona fide purchaser (*see Atlantic Trust Co. v Holdsworth*, 50 App Div 623 [1900], *affd* 167 NY 532 [1901]; *Seymour v McKinstry*, 106

NY 230, 239 [1887]; *Hopper v Hopper*, 103 AD2d 911, 913 [1984]).

Here, FortisUS failed to meet its burden of establishing as a matter of law that plaintiff is not the holder of either an equitable mortgage or a vendor's lien. FortisUS failed to establish that there was no intent by plaintiff and Long Lake to create a mortgage on the property when they entered into the 1985 agreement, and, with respect to both remedies, FortisUS did not establish as a matter of law that it was a bona fide purchaser. Indeed, the record establishes that, prior to purchasing the property, FortisUS had in its possession various documents to place it on inquiry with respect to the existence of an agreement between plaintiff and Long Lake (*see generally 487 Elmwood v Hassett*, 83 AD2d 409, 412-413 [1981], *appeal dismissed* 55 NY2d 1037 [1982]). Although FortisUS submitted evidence that a title search did not reveal the existence of the 1985 agreement because title to the property never passed from plaintiff to Long Lake, plaintiff raised an issue of fact in that respect by submitting the affidavit of an expert who averred that his preliminary title search for the property revealed the 1985 agreement. There is thus a triable issue of fact whether FortisUS had constructive notice of the 1985 agreement, based both on the documents in its possession prior to the purchase and the adequacy of its title search (*see generally Terwilliger v Van Steenburg*, 33 AD3d 1111, 1115 [2006]; *Beckmann v 71 Speeder Rd., LLC*, 28 AD3d 1053 [2006]; *Fairmont Funding v Stefansky*, 301 AD2d 562, 564 [2003]). Present—Gorski, J.P., Martoche, Smith, Centra and Green, JJ.